# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **ANGELENE M. JACKSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17CV00020 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **TRUPOINT BANK,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Hilary K. Johnson, Hilary K. Johnson, P.C., Abingdon, Virginia, for Plaintiff; G. Bethany Ingle, Littler Mendelson, P.C., Tysons Corner, Virginia, and Kevin M. Kraham, Littler Mendelson, P.C., Washington, D.C., for Defendant.*

The plaintiff in this action asserts a claim of discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Following discovery, the defendant has moved for summary judgment.[1] Because the plaintiff has failed to establish a prima facie case of discrimination, I will grant the defendant's motion and enter judgment in its favor.

## I.

The defendant has objected to the evidence submitted by the plaintiff in opposition to the Motion for Summary Judgment. Because my rulings on the

---

[1] The motion has been fully briefed and is ripe for decision. I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

defendant's objections will affect which facts can be considered in deciding the Motion, I will address the objections first as a threshold matter.

The exhibits to the plaintiff's Memorandum in Opposition are not accompanied by a declaration or affidavit and were not authenticated by a witness through deposition testimony. The exhibits consist of several employee evaluations of the plaintiff, a document that purports to be the plaintiff's written response to her 2016 evaluation, a Salary Increase Form for Samantha Salyer, a document titled "Notes to File – Angie Jackson – March 29, 2016" that appears to have been written by Garnette Owens, and an email exchange between Owens and the plaintiff dated March 30, 2016. In addition to challenging the authentication of these exhibits, the defendant argues that the documents are inadmissible hearsay.

After the defendant objected to the admissibility of these exhibits in its reply brief, counsel for the plaintiff filed a declaration stating that all of these documents were produced by the defendant in discovery and are therefore authentic and admissible. The defendant has moved to strike this declaration of counsel, both because it was filed without leave of court and because it is itself inadmissible, as counsel cannot serve as a witness and has no personal knowledge regarding the underlying documents.

"Only evidence that would be admissible at trial may be considered for summary judgment purposes." *Hunter v. Prince George's Cty.*, 36 F. App'x 103,

106 (4th Cir. 2002) (unpublished). Federal Rule of Civil Procedure 56(c)(2) allows a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The rule does not require that the nonmovant actually present the evidence in an admissible form in response to the motion, but only that the documents could be presented in an admissible form at trial. *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) (explaining that following the 2010 amendment of Rule 56, "[a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form"). "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir.1991).

Although the defendant argues that the documents in question were not authenticated, it does not contend that they are in fact inauthentic or not what they purport to be. The defendant does not suggest, for example, that the employee evaluations or email exchange have been altered or fabricated. I find that the lack of an authenticating affidavit, declaration, or deposition does not render the plaintiff's exhibits inadmissible for purposes of summary judgment.

I need not consider the declaration of plaintiff's counsel in reaching this conclusion. Regardless of whether the documents were produced by the defendant in discovery or obtained in some other way, there is no suggestion that they are

anything other than what they seem. However, because the declaration of counsel was filed without leave of court in violation of Local Rule 11(c)(1),[2] I will grant the defendant's Motion to Strike.

Nevertheless, the declaration by plaintiff's counsel is not needed for me to assume that the employee evaluations, salary increase form, and email exchange satisfy the requirements of the business records exception to the general prohibition of hearsay evidence. *See* Fed. R. Evid. 803(6). I agree with the defendant, however, that the plaintiff's response to her 2016 evaluation and the "Notes to File" are inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. Owens was not deposed, and neither party has submitted any affidavit or declaration of Owens. The unauthenticated "Notes to File" document, which itself recites hearsay within hearsay, is not an appropriate method of presenting Owens's testimony. It consists largely of recitations of statements that the plaintiff made to Owens. Both the "Notes to File" document and the plaintiff's response to her evaluation are merely attempts to bolster the plaintiff's claim with her own unsworn out-of-court statements. This is not permissible. Therefore, I will not

---

[2] Local Rule of Civil Procedure 11(c)(1) states, in relevant part, "the moving party may file a rebuttal brief within 7 days after the service of the opposing party's reply brief. No further briefs (including letter briefs) are to be submitted without first obtaining leave of court." Although the Declaration of Hilary K. Johnson is not technically a brief, I find that the local rule also encompasses evidence and other documents in support of or in opposition to motions and prohibits the submission of such documents after the close of briefing absent leave of court.

consider these two documents, Plaintiff's exhibits B and E, in deciding the Motion for Summary Judgment.

The defendant further urges me to disregard statements in the plaintiff's Brief in Opposition that are not supported by citations to record evidence. Rule 56 requires a party to support its assertion of facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). To the extent that the plaintiff's brief contains unsupported assertions, I will not consider them in deciding the Motion for Summary Judgment. The recitation of the facts set forth below includes only those facts found in documents that are part of the record and would be admissible at trial.

II.

The following facts taken from the summary judgment record are either undisputed or, where disputed, are stated in the light most favorable to the plaintiff.

Plaintiff Angelene Jackson first began working for Miners & Merchants Bank, a predecessor of defendant TruPoint Bank ("TruPoint"), in 1975. She advanced from an entry-level position to an assistant vice president position and then resigned in 1981. She began working for another bank, which through a

series of acquisitions eventually came to be owned by TruPoint in 2001. When she became an employee of TruPoint, she was a teller. She advanced to the position of Backup Head Teller and eventually Head Teller.

From approximately 2012 through 2016, Richard Hughes was the Branch Manager for the Lebanon, Virginia, branch of TruPoint, where Jackson worked. Leslie Perkins became the Branch Manager in October, 2016, and Hughes retired in December 2016.

In 2015, TruPoint began to implement a Universal Banker certification program that would enable all tellers to perform customer service tasks and all customer service representatives to perform bank teller tasks. Jackson was required to take a test to obtain the Universal Banker certification, and she passed the test on February 23, 2016. The certification would enable her to perform a wider variety of tasks for customers, including tasks that a teller would not normally perform, such as opening checking accounts and accepting loan applications. Her job duties changed after she obtained the Universal Banker certification. When a customer wanted to open an account, Jackson would leave the teller line, accompany the customer into an office, and assist the customer. Previously, as Head Teller, her duties had been limited to those involving the teller line, including training tellers, ordering money, and completing monthly reports. After obtaining the Universal Banker certification, she continued to perform many

of those duties but also performed additional duties on what was known as the platform side of the bank's operations, such as opening accounts and taking loan applications.

Jackson thought that becoming a Universal Banker was a promotion. According to Jackson, Tara Justus told her that she was being promoted, although Justus denies this. Jackson gave up the Head Teller position to become a Universal Banker. She testified at her deposition that she was willing to take the new position to help the bank. She had expected to spend 75 percent of her time in the Universal Banker office, which she had helped to set up, but she ended up spending only about 50-60 percent of her time in the office.

Jackson's pay neither increased nor decreased when she became a Universal Banker. She earned $14.77 per hour in both positions. Upon receiving the Universal Banker certification, Jackson received a one-time bonus and one extra vacation day. In a "Memo to File," Hughes wrote:

> [Jackson's] performance review has been completed; however since she is over the maximum for the range for a Teller 3/Universal Banker 2, she will not be eligible for an hourly rate increase. The maximum of the range is $14.36 and her current hourly rate is $14.77. Although she is currently over the maximum range, her hourly rate will not be reduced to the maximum but will remain at $14.77. Should there be a range adjustment made in the future and the maximum range amount increases, she may become eligible for a performance review raise.

Def.'s Mem. Supp. Mot. Summ. J. Ex. 1, Jackson Dep. Ex. 3, ECF 18-1.

On March 30, 2016, after being presented with the Memo to File, Jackson complained to Hughes that the Universal Banker position was a demotion rather than a promotion. He told her that she would not be getting a raise because she had stepped down from her position as Head Teller to the Universal Banker position.

Samantha Salyer succeeded Jackson as the Head Teller. Jackson did not know Salyer's exact age but testified that she was around 28 or 29 years old. On September 5, 2016, Salyer was given a raise from $16.83 per hour to $17.34 per hour. Salyer resigned after seven months, and Jackson filled the role of Head Teller for two months. Jennifer Trent then became the Head Teller in December 2016.

Jackson felt that Perkins, the new Branch Manager, treated her "like [she] was stupid, like [she] did not know anything about banking." *Id*. at Jackson Dep. 65, ECF No. 18-1. Perkins took certain tasks away from Jackson. According to Jackson, Perkins used a "hateful" and "demanding" tone of voice with her. *Id.* at 67. In her deposition, Jackson described several interactions with Perkins in which Jackson felt belittled. All of these exchanges involved Jackson's performance of her job duties, and Perkins did not refer to Jackson's age, expressly or implicitly, during any of the conversations Jackson described.

Jackson contends that Perkins harassed her by assigning her menial jobs and undesirable tasks. While Hughes was still the Branch Manager, he directed her to work on safe deposit boxes, and according to Jackson, "nobody would want to work on those." *Id.* at 148. Perkins made Jackson work in the drive-through. Jackson once commented to Perkins that a young teller was nice, and Perkins responded by stating that the teller smiled all the time and knew what she was doing, which Jackson interpreted as suggesting "that [Jackson] didn't know what [she] was doing and that [she] never smiled." *Id.* at 151. Jackson found Perkins's comment to be belittling.

Jackson was offended when Perkins would ask if she needed training or help with tasks that she had been performing for many years. Perkins reviewed and commented on the amount of overtime Jackson had worked during a 15 or 18 month period, and Jackson thought Perkins was trying to make her feel guilty about incurring so much overtime. Jackson also described an incident in which Perkins became upset with her because she had told a customer that Perkins was not at the branch. Jackson believed that Trent had reported this conversation to Perkins.

Jackson admits that she had been warned several times about violating TruPoint's recording of time policy by working when she was not on the clock, although she alleges that this policy was selectively enforced. Perkins counseled

her about working off the clock and placed a written warning in her personnel file on December 19, 2016. Jackson admits that she became agitated on a few occasions while working at the bank. She concedes that there was at least one person older than her who worked for TruPoint in 2016.

On December 27, 2016, Jackson met with Owens and Perkins and expressed that she felt she was being unfairly singled out by Perkins. In the meeting, Perkins stated that she was not "trying to get rid of" Jackson. *Id*. at 107. Owens and Perkins advised Jackson of the importance of adhering to her set schedule and complying with timekeeping policies and asked her to remain calm during stressful times.

Jackson's Employee Evaluation Form dated March 6, 2016, indicated that her performance was generally satisfactory, though it noted room for improvement. For example, the evaluation noted the following issues, among others:

- "Angie struggles at times in delegating and allowing staff members to learn new tasks and processes."

- "Angie will improve her speed in performing customer requests by committing processes and procedures to memory."

- "Angie at times lacks confidence in her decisions involving check cashing, holds and other tasks and seeks validation."

- "Angie has at times struggled to implement new processes and procedures as part of her routine."

- "In the Head Teller role her performance did not meet expectations in several areas. . . . [including] staff development and delegation to assist the team to learn new functions, insufficient support given to implement new processes and procedures, and a lack of confidence in decision making at times."

*Id.* at Jackson Dep. Ex. 1, ECF No. 18-1. However, the evaluation clarified that "Angie does meet expectations in the technical aspects of her role as Teller 3/Universal Banker." *Id.* Hughes completed this evaluation and signed it on March 18, 2016. Jackson's evaluations from prior years were likewise mostly positive but also contained some suggestions of how she could improve certain aspects of her job performance, particularly with respect to delegation and managing the teller staff.

Tara Justus is a Vice President and Director of Retail Operations for TruPoint. Her office is located in the Lebanon, Virginia branch. She previously worked as the bank's training officer while Jackson was the Head Teller. In November 2015, she learned that the Lebanon branch's ATM had not been settled correctly for two consecutive days. Upon investigating the issue, she learned that Jackson had written her own set of settlement procedures rather than using those

provided by the bank, and her procedures were missing a step. Justus told Jackson that she needed to use the provided set of procedures, but Jackson instead revised her own set of procedures to add superfluous steps, which caused the tellers to spend more time than necessary to settle the ATM each day.

On October 14, 2016, Perkins witnessed Jackson struggling to open an account for a customer. The customer had been waiting more than ten minutes, so Perkins led the customer to her office and opened the account. While Perkins helped the customer, Jackson returned to the teller line and cried. When Perkins spoke with Jackson about the incident several days later, Jackson again cried and stated that she did not feel comfortable in the Universal Banker role.

On November 22, 2016, Perkins terminated a 30-year-old employee for force post balancing her teller drawer.[3] Perkins had previously counseled the employee for her failure to adhere to the proscribed work schedule.

In March 2017, Jackson requested medical leave and TruPoint granted her request. Jackson testified that "it got so bad I couldn't work there anymore, . . . I got sick and had to go to the doctor." *Id*. at Jackson Dep. 117, ECF No. 18-1. By letter dated June 28, 2017, TruPoint asked for additional information regarding Jackson's medical condition and, upon receiving a note from Jackson's physician

---

[3] "Force balancing" happens when the teller knows the amount of money is off but "forces" a zero balance. *Hill v. Branch Banking & Tr. Co*., 264 F. Supp. 3d 1247, 1263 n.3 (N.D. Ala. 2017).

requesting two more months of leave, TruPoint extended her leave until August 22, 2017. On August 24, 2017, after Jackson had been on leave for five months, TruPoint sent Jackson a Fitness for Duty/Accommodation Certification Form for her doctor to complete and submit by September 1, 2017. On October 6, 2017, when she had been on leave for more than six months and her doctor had indicated that she was still unable to perform any of her essential job duties, and the duration of her limitations remained unknown, TruPoint informed Jackson that she had exhausted all available leave and it could no longer hold her position open. TruPoint indicated that it would terminate her employment effective October 12, 2017, unless it received additional information regarding her ability to work before that date.

Jackson applied for short-term disability benefits and received approximately $600 in benefits for two weeks of missed work. Thereafter, the disability insurance company determined that Jackson was no longer disabled and was able to perform the required functions of her job, so it denied her claim for further benefits. Jackson never applied for unemployment benefits or Social Security Disability benefits. She has not looked for other employment since she was terminated by TruPoint because she believes she is unable to work due to post-traumatic stress disorder. She has trouble concentrating and experiences

nightmares and anxiety. She has been prescribed medicine for depression and anxiety.

Jackson filed a charge with the Equal Employment Opportunity Commission on May 2, 2016, received a Notice of Right to Sue on April 5, 2017, and timely filed suit in this court on June 5, 2017. In her EEOC charge, she listed the date of discrimination as March 23, 2016 through present. She did not amend her Complaint in this case after TruPoint terminated her employment. Thus, her Complaint pertains only to TruPoint's alleged demotion and harassment of her. She has not alleged discriminatory discharge.

III.

An award of summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must assess the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995).

Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party "need not

produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.,* 33 F.3d 390, 393 (4th Cir. 1994) (internal quotation marks and citation omitted). Summary judgment is not "a disfavored procedural shortcut," but is an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex,* 477 U.S. at 327.

Because Jackson offers no direct evidence of discrimination, her age discrimination claim is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). This framework requires the plaintiff to establish a prima facie case of discrimination by a preponderance of the evidence. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981). A prima facie case of age discrimination under the ADEA consists of four elements to be shown by the plaintiff:

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment

action. *Id.* Assuming the employer meets its burden of production, the burden shifts back to the plaintiff to prove that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)). At this point, the burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. As the Supreme Court has counseled,

> [w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves*, 530 U.S. at 148–49.

It is undisputed that Jackson is over the age of 40 and is therefore a member of a protected class under the ADEA. TruPoint contends that her change in position from Head Teller to Universal Banker was not a demotion, and Jackson has therefore failed to show that she suffered any adverse action. I find that Jackson has produced sufficient evidence from which a jury could conclude that her position change was a demotion, based on the lower pay range for the new position and Hughes's alleged statement that the Universal Banker was a demotion.

However, Jackson admits that she agreed to accept the role of Universal Banker. She asserts that she only agreed to give up the position of Head Teller because she thought that the Universal Banker position was a promotion, but that does not change the fact that she willingly accepted the new position. Jackson did not suffer any decrease in pay and in fact was given a one-time bonus and an additional vacation day when she received her Universal Banker certification and assumed her new position. Based on these undisputed facts, Jackson cannot establish that she suffered any adverse action. At most, she has established that she made a decision she later regretted.

Even if she had met her burden of proving that she suffered an adverse employment action, Jackson's claim could not survive summary judgment due to her failure to demonstrate that she was meeting her employer's legitimate expectations in the role of Head Teller. Her 2016 employee evaluation contains several complaints about her performance and expressly states that she did not meet some of the expectations of the job. The statements in this evaluation are consistent with similar statements made in earlier performance evaluations. The 2016 evaluation was completed by Hughes, not Perkins, and Hughes wrote these comments before Perkins began working at the Lebanon branch. Jackson speculates that Hughes did not actually complete the 2016 evaluation until May, after she filed her EEOC charge, but she offers no evidence in support of that

belief. Hughes was of retirement age himself, and the record contains no indication that his negative assessment of Jackson's performance was motivated by age-based animus.

Furthermore, Jackson has not established that she was replaced by someone outside the protected class. Although Jackson speculated during her deposition that Salyer was approximately 28 or 29 years old, she has not produced any evidence of Salyer's actual age, nor has she produced any evidence of Trent's age.

Finally, even if Jackson could meet her burden of producing evidence sufficient to make out a prima facie case of age discrimination, she cannot carry her ultimate burden of proving intentional discrimination. TruPoint has proffered a legitimate, non-discriminatory reason for placing Jackson in the Universal Banker position: she was not performing the managerial aspects of the Head Teller role satisfactorily, and her good customer service skills would make her an asset to the platform side of the bank's operations in the Universal Banker role. Jackson has not put forth any evidence tending to show that this rationale was false and a pretext for age-based discrimination. Rather, the record evidence reveals little more than a personality conflict between Jackson and Perkins, who became Jackson's supervisor after she had changed positions. Therefore, TruPoint is entitled to judgment as a matter of law.

IV.

The Defendant TruPoint Bank's Motion to Strike Declaration of Hilary K. Johnson, Counsel for Plaintiff, ECF No. 36, is GRANTED.  Because Jackson has not created a genuine issue of material fact as to whether she was demoted because of her age, Defendant TruPoint Bank's Motion for Summary Judgment, ECF No. 17, is GRANTED.

It is so **ORDERED**.

A separate final judgment will be entered herewith.


ENTER:  June 12, 2018

/s/  James P. Jones
United States District Judge